IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 6:17-CR-03021-MDH |
| | ) | |
| JOHN DAVID HALE | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Before the Court is the Report and Recommendation of the Magistrate Judge. (Doc. 76). The Magistrate Judge has recommended that the Court grant-in-part and deny-in-part Defendant John Hale's Motions to Suppress, which it considered jointly. (Docs. 39, 40, and 41). For the reasons stated below, the Court will adopt the Report and Recommendation in its entirety and consequently grant-in-part and deny-in-part Hale's Motions to Suppress.

**Findings of Fact**

The Court has carefully reviewed the entire record in this case, including all video and audio recordings, the exhibits, and transcripts of the three suppression hearings conducted by the Magistrate Judge with exception to the findings noted below. (Docs. 64, 68, and 70). The Court concurs with the factual findings made by the Magistrate Judge in his Report and Recommendation. (Doc. 76, 2-11) and hereby adopts those findings for the limited purpose of ruling on Hale's Motions for Suppression, with exception to the findings noted below.

The Magistrate Judge leaves open the question of whether officers' searched Hale's phone before he gave consent for that search. On review, the Court finds compelling audio evidence that an officer stated to another officer that Hale had called Felix Forjan's daughter at some point after

1

the Home Depot meeting and before being seized. An officer could only have gained this knowledge from searching Hale's phone. Officer Leslie's testimony that Hale's phone was not searched prior to obtaining Hale's consent simply does not accord with the audio recording and will therefore be disregarded. The Court makes a factual finding that Hale's phone was searched by law enforcement before consent for that search was obtained. The Magistrate Judge also leaves open whether Officer Leslie stated "You may want to delete that video" in reference to the dashcam video of the traffic stop. On review, the Court finds compelling audio evidence that Officer Leslie did indeed make that statement.

**Findings of Law**

Hale has filed three Motions to Suppress. The first moves to suppress all statements made by Hale and any evidence derived from those statements. (Doc. 39). The second moves to suppress all evidence derived from Hale's consent to a search of his property and cellphone. (Doc. 40). The third moves to suppress all evidence derived from Hale's warrantless seizure and arrest. (Doc. 41). The Court will address these motions in turn.

**1. Suppression of Statements**

Hale moves to suppress all statements he made and the fruits thereof. Under *Miranda v. Arizona*, a law enforcement officer must warn a suspect in custody about certain rights, including their right to not incriminate themselves and their right to counsel. 384 U.S. 436, 444 (1966). If an officer does not inform a defendant of their rights before an interrogation, statements made during that interrogation are inadmissible. *United States v. Cowan*, 674 F.3d 947, 957 (8th Cir. 2012). In this case, Hale was not informed of his *Miranda* rights until he was formally arrested at his residence in Bolivar, Missouri, after law enforcement had confiscated drugs on his property. Hale argues he was placed in custody when he was handcuffed on the side of the road after being pulled

over, and that any statements made in response to questioning between that moment and the moment he was *Mirandized* are inadmissible. The government argues that even if he was temporarily placed in custody after being pulled over, he was not in custody during his subsequent questioning by law enforcement at the DEA office, because his handcuffs were removed and he was never told he was not free to leave.

The issue in this case is whether Hale5 was subject to a custodial interrogation when he was questioned by law enforcement (1) on the roadside; and (2) at the DEA office. Interrogation includes "express questioning" as well as any questioning reasonably likely to elicit incriminating information. *Id.* at 958. A person is in custody when a "reasonable person in his position would not have felt free to terminate the interrogation and leave." *Id.* at 957. The Court is to consider several factors when conducting its analysis, including: (1) whether police told the suspect the questioning was voluntary, that he could leave, or that he was not considered under arrest; (2) whether the suspect's movement was restrained during the questioning; (3) whether the suspect initiated contact with authorities or acquiesced to requests to respond to questions; (4) whether police used strong-arm tactics or deception during questioning; (5) whether the atmosphere of the questioning was police-dominated; and (6) whether the suspect was arrested at the end of questioning. *Id.* (citing *United States v Griffin*, 922 F.2d 1343, 1347 (8th Cir. 1990). The key inquiry is not whether the questioning took place in a coercive environment, but whether the Defendant's freedom to depart was at all restricted. *United States v. LeBrun*, 363 F.3d 715, 720 (8th Cir. 2004) (en banc) (internal quotations omitted).

The Court will first dispatch with whether Hale was under custodial interrogation on the roadside. After being stopped by law enforcement, Hale was ordered to exit his car, immediately pushed against his own truck, and handcuffed, all the while being yelled at by officers, some of

whom had their guns drawn. Immediately following his seizure, officers asked him several question, including why he had been trailing the vehicle he spotted at the Home Depot. There is no question that Defendant, in this situation, was in custody. Nor is there a question that the inquiries by police officers were designed to elicit potentially incriminating information, and thus interrogative. Because Hale was subject to custodial interrogation on the roadside and had not been *Mirandized*, the Court will adopt the recommendation of the Magistrate Judge and grant Hale's Motion to Suppress as to any statements made by him on the roadside in response to police questioning and any fruits thereof.

Whether Hale was under custodial interrogation at the DEA's office presents a closer question. The first factor cuts in favor of Hale. Although the police did not tell him he was under arrest, they also did not tell him he was free to leave. The second factor also cuts in favor of Hale. Hale was escorted to the interrogation room in handcuffs. He was never out of the presence of officers once arrested on the roadside. See *United States v. Longbehn*, 850 F.2d 450, 452-53 (8th Cir. 1988) (holding continuous police supervision rendered detention custodial). Hale at one point testified that the handcuffs stayed on throughout questioning, while Officers Krisik and Leslie testified the handcuffs were removed once he was in the room. The Court does not find it necessary to resolve the conflicting testimony. Whether or not he was handcuffed, Hale testified that he "absolutely" did not feel he could leave. Law enforcement officers testified at the suppression hearing that Hale could have left if he had asked, but their conduct before, during, and after the interview at the DEA Office was plainly calculated to give the impression that Hale was stuck with them. For instance, an officer told Hale at one point that he was "not in the driver's seat right now." The Court finds that Hale's movement was restrained during his questioning at the DEA office. The third factor cuts in favor of Hale. Hale did not initiate contact with authorities in the

interrogation room. Rather, it was the police who took him to the room, sat him down, and initiated questioning after telling Hale that answering their questions was the only way to avoid a 20-year prison sentence.

The fourth factor cuts in favor of the government, but it is a close call. The Eighth Circuit has held that "coercive aspects of police interviews are largely irrelevant to the custody determination except where a reasonable person would perceive the coercion as restricting his or her freedom to depart." *LeBrun*, 363 F.3d at 1026. Hale argues that the officer's used strong-arm tactics when they told him that cooperation with their investigation was the only way to avoid a 20-year prison sentence. After careful review, the Court finds that a reasonable person in Hale's situation, subject to what he characterizes as "strong-arm tactics", would feel somewhat restricted but would not be entirely robbed of their freedom to depart the interview. The tactics used against Hale to ensure he stayed in the questioning chamber were milder than the tactics used by officers in other cases where the Eighth Circuit has held that strong-arm tactics were not present. See *United States v. Sheikh*, 367 F.3d 756, 762 (8th Cir. 2004) (finding that police officers did not use strong-arm tactics when they yelled at defendant and accused him of lying); *United States v. Laurita*, 821 F.3d 1020, 1026 (8th Cir. 2016) (finding that police officers did not use strong-arm tactics when they asked whether a defendant suspected of possessing child pornography had committed child sexual assault because the question was not deceptive and because defendant testified he did not feel pressured). The officers who questioned Hale did not raise their voice. One officer did tell Hale that prisoners in the federal system do not get reduced sentences for good behavior, which is not true, but otherwise did not endeavor to deceive him. The officers were not aggressive, and although they were armed they did not draw their weapons. See *United States v. Axsom*, 289 F.3d 496, 502 (8th Cir. 2002) (finding that police officers did not use strong-arm

5

tactics when they interviewed Defendant while armed because they did not adopt a "threatening posture"). The most coercive part of the interrogation occurred when the officers told Hale that cooperating with them was the only way to reduce a future prison sentence. These types of statements are intended to pressure defendants into cooperating, and Hale almost certainly did feel that pressure. However, a reasonable person would not feel so pressured as to effectively rob him of his freedom to depart.

The fifth factor cuts in favor of Hale because the atmosphere of the police-questioning was undoubtedly "police-dominated." Finally, the sixth factor cuts in neither party's direction. Hale was not technically arrested immediately after questioning, but he was placed in handcuffs and driven to his property in Bolivar, where he was eventually formally arrested after drugs were found there. After considering each indicium noted in *Griffin*, the Court finds that Hale's freedom to depart during his questioning at the DEA office was indeed restricted and thus he was under custodial interrogation. Consequently, the Court will adopt the recommendation of the Magistrate Judge and grant Hale's Motion to Suppress as to any statements made during that custodial interrogation in response to police questioning and any fruits thereof.

**2. Motion to Suppress Evidence Derived from Hale's Consent to a Search**

Hale argues that he did not voluntarily consent to any searches of his property because he was improperly coerced into signing consent forms. In the alternative, he claims the government exceeded the scope of his consent by searching his outbuildings, his truck in the DEA parking lot, and his cell phone. The Court will address these arguments in turn.

**a. Voluntariness of Consent**

Hale argues he did not voluntarily consent to the search of his property, including his residence, the outbuildings, his cellphone, the vehicle on his property, and the vehicle seized after

his arrest and transport to the DEA parking lot. Evidence obtained from a warrantless search is inadmissible unless the search is conducted after obtaining voluntary consent of the person whose property is being searched. *United States v. Chaidez*, 906 F.2d 377, 380 (8th Cir. 1990) (citing *United States v. Matlock*, 415 U.S. 164, 171 (1974)). Consent is voluntary only if it is the product of an "essentially free and unconstrained choice" as opposed to "the result of duress or coercion." *Id.* Courts will consider the totality of the circumstances to determine voluntariness, including the defendant's age, intelligence, experience in the legal system, whether they were in custody or in a public setting, whether they were *Mirandized*, and their behavior during the search itself. *Id.* The Court will also consider whether the police officers obtained consent via threats, intimidation, promises, deception, or punishment. *Id.* The government must show voluntary consent by a preponderance of the evidence. *Id.*

Hale argues his consent was coerced and thus invalid because (1) he had been seized and detained for a significant period of time prior to consent; (2) he had not been *Mirandized* prior to giving consent; (3) the officers used the presence of Hale's son to coerce his consent; (4) he was "uncooperative" during the search; and (5) he was subjected to threats that overcame his free will to resist the officer's request.

After careful review, the Court is not persuaded that Hale's consent was involuntary based on those arguments. First, the record shows that only 18 minutes elapsed between Hale's arrest and his arrival at the DEA office, and that he was questioned at the office for less than 30 minutes before signing the consent forms. Detention and questioning for that amount of time does not render consent involuntary. See *United States v. Rakotojoelinandrasana*, 450 Fed.Appx. 549, 551 (8th Cir. 2011) (five-hour detention did not render consent involuntary where officers kept weapons concealed and did not handcuff suspect); *United States v. Comstock*, 531 F.3d 667, 678

(8th Cir. 2008) (two-hour detention did not render consent involuntary where defendant was handcuffed). Second, although the fact that Hale had not been *Mirandized* before his consent is a factor in the Court's analysis, it does not by itself render consent involuntary. See *United States v. Cobo-Cobo*, 873 F.3d 613, 616 (8th Cir. 2017); *United States v. Beasley*, 688 F.3d 523, 531 (8th Cir. 2012). Third, although the fact that Hale's son was present during the encounter and at the DEA office could plausibly have pressured Hale to cooperate, the fact of his presence was outside the hands of law enforcement. The Court finds nothing in the record indicating that law enforcement ever used the son's presence to coerce his father or did anything relating to the son other than provide for his safety and eventual return home. Finally, the record does not support the claim that Hale was uncooperative after signing the consent forms. Hale did not object when his cell phone was searched at the DEA office in his presence, nor did he object at any point during the approximately forty-minute ride from Springfield to Bolivar. After arriving at his property, Hale sat in his house unagitated and voiced no objection to the ongoing search. It was only after drugs were found and after he was formally arrested that he began to object.

To determine whether Hale voluntarily consented to the searches, the Court will look to the *Chaidez* factors. Hale was 35 at the time of arrest, not intoxicated, and had had multiple prior interactions with law enforcement. He is of at least average intelligence and runs his own business. Immediately prior to signing the consent forms, Hale was isolated from his son and subject to custodial interrogation. Overall, the situation had deescalated significantly from the roadside, where officers had drawn their guns while yelling and cursing at him. Before signing the consent forms, Hale was instructed to read the forms carefully and told he had the right to refuse. The most coercive element of the questioning was the threat made by law enforcement that if Hale did not cooperate, he would be facing a 20-year prison sentence. Hale argues that this threat rendered his

consent involuntary, notwithstanding his signature on the consent forms, which in part stated "I have not been threatened, nor forced in any way. I freely consent to this search." Finally, although he was not *Mirandized*, the Court observes that Hale would have been well aware of his rights with or without their recitation in this instance in light of his prior interactions with law enforcement.

In the context of confessions, the Eighth Circuit has found that "promises for leniency or threats do not render a confession involuntary unless it overcomes the defendant's free will and impairs his capacity for self-determination." *Sheets v. Butera*, 389 F.3d 772, 778 (8th Cir. 2004). The Court finds the same logic applicable in the context of a suspect's consent to a search. In light of Hale's education, intelligence, and prior interaction with law enforcement, the Court finds that the officer's "threat" amounted to a restatement of a principle well known to anyone subject to more than a glancing interaction with the justice system: that cooperating with law enforcement is a common means toward reducing punishment. The Eighth Circuit has held that the threat of a long prison sentence if a defendant was uncooperative and the promise of a lenient sentence if a defendant was cooperative did not render a confession involuntary. *United States v. Meirovitz*, 918 F.2d 1376, 1379 (8th Cir. 1990); see also *United States v. Pierce*, 152 F.3d 808, 813 (8th Cir. 1998) (officer telling defendant "it's a proven fact that cooperation helps in the long run" with regard to sentencing did not render subsequent cooperation involuntary). The officer's threat in this case, although potent, was not fundamentally deceptive, and was not sufficiently coercive as to overcome Hale's will and render his consent involuntary. The officers did deceive Hale by telling him federal prisoners cannot reduce their sentences for good behavior, but in view of the totality of the circumstances this lie was not enough to overcome his will. After carefully weighing every

factor, the Court finds by a preponderance of the evidence that Hale's consent was voluntary and will consequently adopt the Magistrate Judge's Report and Recommendation in this matter.

**b. Scope of Defendant's Consent as to the Outbuilding**

Hale also contests the government's search on the basis that they exceeded the scope of his consent. Hale claims that when he signed the consent form, the area to be searched included only "1515 E. 380th Rd., Bolivar, MO." and that after signing the consent form, Officer Leslie added "The residence, vehicles, & all outbuildings" beneath it. Based on that claim, Hale argues the search of his vehicle and outbuilding at his property in Bolivar was unlawful. Officer Leslie flatly denies that he added the second line after Hale signed.

The Magistrate Judge resolved the contradictory testimony in favor of Officer Leslie. The Court has discretion to assess the credibility of witnesses for the purpose of a motion to suppress. 456 F.3d 850, 860 (8th Cir. 2006). After careful review of the available evidence, the Court finds that Officer Leslie's testimony is more credible. The Court does not find that the handwriting in the second line is different than the handwriting in the first line, as Hale claims. Furthermore, the Court notes that Hale did not object to the search of the outbuilding while that search was ongoing, a lapse that does not make sense if Hale had not already consented to its search. See *United States v. Lopez-Mendoza*, 601 F.3d 861, 868 (8th Cir. 2010) (citing *United States v. Espinosa*, 782 F.2d 888, 892 (10th Cir. 1986)). Finally, Hale tries to discredit Officer Leslie's testimony by pointing to a moment after his arrest but before the interview, where Officer Hale said "You may want to delete that video" to another officer, in apparent reference to the dashcam video. Hale characterizes this statement as proof that Officer Leslie attempted to destroy evidence and asks the Court to disregard the remainder of Officer Leslie's testimony on that basis.

With respect to Officer Leslie's statement, the Court observes that the other officers responded to the request with laughter and that the dashcam video was not deleted. Consequently, although the Court cannot entirely discount the improper request in its credibility determination, it does interpret the request as being made in jest and being received as such by the other officers. The Court does not consider the statement indicative of a serious desire to destroy evidence. After careful review of the evidence, the Court adopts the recommendation of the Magistrate Judge in this matter.

**c. Scope of Consent as to Truck in DEA Parking Lot**

After Hale signed the consent forms, officers searched the truck he had been driving that day, which was located in the DEA parking lot. The Magistrate Judge recommended the fruits of that search be suppressed because it fell outside the scope of Hale's consent. The government argues that the fruits of that search should not be suppressed because the officers who conducted that search had an objectively reasonable belief that the truck was within the scope of Hale's consent. The scope of a person's consent is defined using an objective reasonableness standard, which asks "what the typical, reasonable person would have understood from the exchange between the officer and the suspect." *United States v. Beckmann*, 786 F.3d 672, 678 (8th Cir. 2015).

The scope of Defendant's consent is laid out precisely in the signed consent forms. He consented to a search of his cell phone, as well as a search of "1515 E. 380th Rd Bolivar, MO." Below the address, the it read "The residence, vehicles, & all outbuildings." Officer Leslie testified that he understood "vehicles" to include the vehicle located in the DEA parking lot. There is no documentary or parol evidence of any consent agreement outside of the consent forms. The Court finds that the scope of Hale's consent was perfectly clear and limited to the residence, outbuildings,

and vehicles located at his property in Bolivar. There is no possible way to interpret Hale's consent as extending to the vehicle in the DEA parking lot. Officer Leslie's belief otherwise was objectively unreasonable.

The government next argues that even if the search was unconstitutional, its fruits should not be suppressed under the exclusionary rule because that would require a finding that the search was "sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." *Herring v. United States*, 555 U.S. 135, 144 (2009); see also *United States v. Leon*, 468 U.S. 897, 906 (1984). To that end, the Court must determine whether the officers were acting in good faith by asking whether a reasonable well-trained officer would have known the search was illegal in light of the circumstances. *Herring*, 555 U.S. at 145. The government bears the burden in this inquiry. *United States v. Clark*, 638 F.3d 89, 100 (2d. Cir. 2011) (quoting *Herring*, 555 U.S. at 155).

The government argues that because Officer Leslie was acting in good faith and had an objectively reasonable belief that Hale's vehicle was within the scope of his consent, the fruits of the search should not be excluded. After careful review, the Court finds that the government has not met its burden on the issue of good faith. The search of Hale's vehicle was deliberate and demonstrated a high degree of culpability. Notwithstanding Officer Leslie's testimony, a reasonable well-trained officer could not have construed Hale's consent as extending to his vehicle in the DEA parking lot. Essentially, there is simply no way an officer acting in good faith could believe otherwise. For that reason, the Court will adopt the Magistrate Judge's recommendation in this matter.

**d. Scope of Consent as to the Cell Phone**

Although Hale consented to a search of his cell phone, he moves to suppress the fruits of that search because officers searched the phone before consent was granted. Hale points to a comment by an unknown officer ("he called Felix's daughter") captured on an audio recording after Hale had been seized. The government denies that the phone was searched prior to Hale's consent.

The Court does not find it necessary to resolve whether the phone was searched prior to Hale's consent. Assuming the phone was searched pre-consent, the evidence obtained would still be admissible under the doctrine of inevitable discovery, which holds that "evidence that ultimately or inevitably would have been discovered by lawful means' need not be suppressed." *Hogan v. Kelley*, 826 F.3d 1025, 1028 (8th Cir. 2016) (quoting *Nix v. Williams*, 467 U.S. 431, 444 (1984)). For the exception to apply, the government must prove by a preponderance of the evidence that there was a reasonable probability that the evidence would have been discovered by lawful means in the absence of police misconduct and that the government was actively pursuing a substantial, alternative line of investigation at the time of the constitutional violation." *Hogan*, 826 F.3d at 1028.

Here, the record shows that after gaining Hale's consent, Officer Leslie retrieved the phone from Hale's son and searched it. Officer Leslie's investigation, which was substantial and ongoing at the time of the phone's initial search by another officer on the roadside, constitutes an "alternative line of investigation." There was, at the very least, a reasonable probability that any evidence on the phone would have been discovered as a result of Hale's consent regardless of any earlier unconstitutional search. For that reason, the record shows by a preponderance of the evidence that the search of the phone was inevitable, and thus any evidence obtained from the phone is admissible. The Court will adopt the Magistrate Judge's recommendation in this matter.

### 3. Alternative Justifications for Seizure of the Firearm in the Truck

After Hale signed the consent forms, Officer Leslie searched his truck in the DEA parking lot, seizing the previously-observed firearm and discovering methamphetamine hidden in the gas cap. In the absence of Hale's consent. The government proffers three alternative reasons that the search of the truck was constitutional under the Fourth Amendment's warrant requirement despite the lack of consent: The search incident to lawful arrest exception, the automobile exception, and the community caretaker function exception, as it applies only to the firearm observed in the driver's side door. The governments contends the DEA did not search the truck until after Hale consented to a search of his phone and his property in Bolivar, and the Court will hold the government to that contention.

#### i. Searches Incident to a Lawful Arrest

Police officers are authorized to search an area "within the immediate control" of a lawfully arrested person. *United States v. Chimel*, 395 U.S. 752, 764 (1969). Under *Arizona v. Gant*, an officer is permitted to "conduct a vehicle search when . . . it is reasonable to believe the vehicle contains evidence of the offense of arrest." 556 U.S. 332, 346 (2009); *United States v. Hill*, 386 F.3d 280, 287 (8th Cir. 2004). To preserve evidence of the offense, the officer may search any area of the vehicle in which the evidence might be found, including areas not within the suspect's immediate reach. *Id.* at 347. However, a lawful search under this exception must be "contemporaneous" with the arrest. *United States v. Wells*, 347 F.3d 280, 287 (8th Cir. 2003) (citing *New York v. Belton*, 453 U.S. 454, 465 (1981)). In this case, the search of Hale's truck was anything but contemporaneous—it occurred nearly an hour after Hale's arrest, and took place in an entirely different location. Because the DEA agents' search was not contemporaneous with Hale's arrest, the search incident to lawful arrest exception is inapplicable to the facts of this case.

The Court also finds that a reasonable well-trained officer would have known the search was not permitted under the automobile exception to the warrant requirement, and that the fruits of the unconstitutional search should thus be excluded. *Herring*, 555 U.S. at 145.

### ii. Automobile Exception

The automobile exception authorizes a warrantless search of a vehicle based on probable cause that it contains evidence of a crime. *Carrol v. United States*, 267 U.S. 132 (1925). The government contends that Officer Leslie had probable cause to believe that Hale's truck contained evidence of a conspiracy to distribute methamphetamine as it sat in the DEA parking lot, and thus his search of the truck was constitutional with or without Hale's consent.

After careful review, the Court finds the government has not supported that contention. Hale was contacted by the undercover officer as he was driving to Springfield, taking his son to a doctor's appointment. Based on Forjan's letter, Officer Leslie had probable cause to believe that Hale was involved in an ongoing conspiracy to distribute methamphetamine. However, there was no probable cause to believe that any evidence of such was in Hale's truck as he ferried his son to and from the doctor or at the unplanned meeting with the DEA agent where he was informed for the first time of Forjan's plot. The fact that Hale trailed the men he saw surveilling him would cut away from an inference that he was at that moment transporting drugs—presumably, a man transporting drugs would be a good deal more cautious. No officer observed any drug paraphernalia, odor, or any other evidence of drugs in the vehicle prior to the post-consent form search. Finally, multiple officers testified at the hearing they were following Hale in hopes he would lead them to the methamphetamine referenced in Forjan's letter, implying they did not believe Hale currently possessed the drugs.

Because there was no factual basis for the belief that any drugs were in Hale's vehicle as it sat in the DEA parking lot, there was no probable cause to believe the truck contained evidence of a crime. Consequently, the automobile exception is inapplicable in this case. Furthermore, the Court finds that Officer Leslie's belief that there was probable cause to search the truck on this basis was objectively unreasonable. For that reason, the Court will exclude the fruits of his unconstitutional search.

### iii. Community Caretaker Function

Under the community caretaker function exception, an officer may enter a suspect's property without a warrant to "help those in danger and to protect property" where the officer has a reasonable belief that an emergency exists requiring his or her attention. *United States v. Quezada*, 448 F.3d 1005, 1007 (8th Cir. 2006) (citing *Mincey v. Arizona*, 437 U.S. 385, 392-93 (1978). These activities must be unrelated to the officer's duty to investigate and uncover criminal activity. *Id.* However, any evidence of criminal activity that the officer readily observes while acting as a community caretaker are admissible under the plain view doctrine. *Id.* at 1008 (citing *Arizona v. Hicks*, 480 U.S. 321, 326 (1987). It must be "immediately apparent" to the police that any item may be evidence of a crime or contraband. *Id.* The government argues that Officer Leslie entered Hale's truck on the roadside for the purpose of removing it from the right of way after Hale had been handcuffed. The government claims that while inside Hale's truck, he observed the firearm, but did not seize it at that time. An officer of the Springfield Police Department, Officer Cooney, testified that he observed the same firearm while conducting a protective sweep of the truck on the roadside, but again did not further search or seize the firearm or the truck at that time. The Court notes that Hale was not a convicted felon, and that the firearm's presence was thus not *per se* evidence of a crime. Furthermore, it would not have been immediately apparent that the

firearm was contraband, as proved to be the case. At the moment he was informed of Forjan's letter, Hale was driving his son to Springfield for a doctor's appointment. Thus, even though there was probable cause to believe that Hale was conspiring to distribute methamphetamine and that 12 pounds of methamphetamine sat in Hale's possession somewhere, there was no factual basis to believe that Hale's truck, at the moment of arrest, contained any evidence of those crimes.

After careful review, the Court finds there is no evidence in the record that Officer Leslie observed the firearm until the truck was searched in the DEA parking lot. The government's statement in its briefing that Leslie observed it earlier is an assertion unsupported by any testimony or other record. By the time Officer Leslie did search the truck, it was in a parking lot, removed from any danger, and he was proceeding in an investigative capacity. Therefore, the community caretaker function exception is inapplicable.

The record shows that Officer Cooney did observe the firearm in plain view during a protective sweep of the vehicle when stopped on the roadside. However, Officer Cooney did not seize the firearm at the time, nor did he search the truck after Hale signed the consent forms. The fact that Officer Cooney observed a firearm in plain view during a protective sweep of the truck does not mean that Officer Leslie or other DEA officers were authorized to conduct a warrantless search of Hale's truck far removed from the time and place of its seizure, in the absence of any applicable exception to the warrant requirement.

The Court also finds that a reasonable well-trained officer would have known the search was not permitted under the community caretaker exception to the warrant requirement, and that the fruits of the unconstitutional search should thus be excluded. *Herring*, 555 U.S. at 145. For the above reasons, the Court will adopt the Magistrate Judge's recommendation in this matter.

**4. Seizure of Defendant**

In his final Motion, Hale argues he was unlawfully seized on the roadside because law enforcement possessed neither reasonable suspicion nor probable cause to stop and detain him. An officer may stop a vehicle and detain its passengers to investigate their suspicion of criminal activity when those suspicions are supported by specific and articulable facts based on the totality of the circumstances. *United States v. Smith*, 648 F.3d 654, 658 (8th Cir. 2011); see also *United States v. Terry v. Ohio*, 391 U.S. 1 (1968). An officer may take measures reasonably necessary "to protect their personal safety during the course of the stop" which may include brandishing a weapon or handcuffing the suspect. *Smith*, 648 F.3d at 659. It is lawful for law enforcement to transport a suspect to a police station if it is based on probable cause, whether it is part of a formal arrest or for further questioning. *United States v. Williams*, 604 F.2d 1102, 1124 (8th Cir. 1979).

Hale's seizure and detention was reasonable and lawful. At the moment Hale was seized on the roadside, officers were aware of the following facts: Hale had been the intended recipient of a letter from a known drug dealer, Felix Forjan, which contained instructions on where to transport 12 pounds of methamphetamine. When an undercover officer contacted Hale and told him he wanted to give him Forjan's letter, Hale arranged to meet him that day. At that meeting, Hale received, read, and apparently understood the import of the letter, and assured the undercover officer he would be rewarded for getting it to him but left quickly after spotting someone taking photographs of the two. After leaving, Hale decided to trail two unmarked police vehicles across town for more than thirty minutes. During that time, he called the undercover officer who delivered him the letter to make sure he hadn't shown it to anyone else. Considering the totality of these circumstances, the officers had probable cause to believe that Hale was conspiring to distribute methamphetamine. Consequently, the decision to stop, seize, and detain Defendant was lawful. Furthermore, in light of the fact that immediately prior to Hale's arrest he had been trailing two

undercover police officers for more than thirty minutes, the officers did not use unreasonable force in arresting him by drawing their guns, pushing him up against his truck, yelling instructions at him, and immediately handcuffing him. See *United States v. Navarette-Barron*, 192 F.3d 786, 791 (8th Cir. 1999). The Court will adopt the Magistrate Judge's recommendation in this matter.

## CONCLUSION

For the reasons stated above, the Court hereby **ADOPTS** the Report and Recommendation of the Magistrate Judge. The Court **GRANTS** Defendant's Motion to Suppress Statements (Doc. 39) and **DENIES** Defendant's Motion to Suppress Evidence Resulting from the detention and seizure of Defendant (Doc. 41). Furthermore, the Court **GRANTS-IN-PART** and **DENIES-IN-PARTT** Defendant's Motion to Suppress as to the searches premised on voluntary consent (Doc. 40), finding Defendant did voluntarily consent to a search of his cell phone and the residence, outbuildings, and vehicles at his Bolivar address but that the government exceeded the scope of Defendant's consent as to the truck searched in the DEA parking lot. Finally, the Court finds no alternative constitutional justification for the warrantless search of Defendant's truck in the DEA parking lot. Accordingly, the Motion to Suppress is **DENIED** as to any evidence found on Defendant's phone or at his property in Bolivar but **GRANTED** as to any evidence found in his truck in the DEA parking lot.

**IT IS SO ORDERED**.

DATED: June 3, 2019

 */s/ Douglas Harpool*
**DOUGLAS HARPOOL**
**UNITED STATES DISTRICT JUDGE**